(No. 5806. December 5, 1931.)

WESTERN HOSPITAL ASSOCIATION, a Corporation, and GOLDENDALE MINING COMPANY, a Corporation, Plaintiffs, v. THE INDUSTRIAL ACCIDENT BOARD OF THE STATE OF IDAHO and JOEL BROWN, G. W. SUPPIGER and FRANK LANGLEY, as Members of Said Board, Defendants.

[6 Pac. (2d) 845.]

J. F. Ailshie and James F. Ailshie, Jr., for Plaintiffs.

Fred J. Babcock, Attorney General, and Maurice H. Greene and Sidman I. Barber, Assistant Attorneys General, for Defendants.

GIVENS, J.—The plaintiff, Goldendale Mining Company, engaged in the mining business in this state, with its principal place of business at Bovill, is an employer of labor under, and carries insurance with the State Fund in compliance with, the Workmen's Compensation Act, C. S., chap. 236.

July 1, 1931, this plaintiff entered into a contract[1] under C. S., sec. 6230, with plaintiff, Western Hospital Association,

---

[1] "This Contract and Agreement, made and entered into this 1 day of July, 1931, by and between the Western Hospital Association, a corporation organized under the Laws of the State of Washington and authorized to do business in the State of Idaho, its successors or assigns, party of the first part, and Goldendale Mining Company, of Bovill, Idaho, its successors or assigns, party of the second part, Witnesseth:

Whereas, the party of the first part is conducting hospitals at St. Maries, Potlatch, Elk River and Orofino, Idaho, and has arrangements with the Western Hospital at Elk River, Bovill & Potlatch and with Physicians and Surgeons located at those points and elsewhere in Idaho and with Specialists in Diseases of the Eye, Ear, Nose and Throat in Potlatch for the Medical, Surgical and Hospital care of sick and injured persons, and

Whereas, the party of the second part is engaged in the Business of Mining in Idaho and has numerous persons in its employ in carrying on said business, and

Whereas, it is deemed desirable by the parties hereto to enter into a mutual contract and agreement for medical, surgical and hospital

which maintains and operates medical and surgical hospitals in the state, for the care and treatment of sick and injured persons under contract with employers of labor.

The Industrial Accident Board refused to approve the contract above mentioned, in the following order or decision:

"The Industrial Accident Board decided that in the future it did not intend to approve any hospital contracts that contained the provision the instant one does, namely, that the party of the first part

" 'Will deduct, withhold and collect the sum of $1 . . . . of each and every one of its employees . . . . who is employed in any of the occupations and territories hereinbefore mentioned for a period of more than *3* days in any

care for the employees of the party of the second part, employed as aforesaid, and for the benefit of said employees who may elect to receive the benefits of such hospital agreement, which said agreement is to be in conformity with and in pursuance of the provisions of the 'Workmen's Compensation Act' of the State of Idaho, and in lieu of the provisions of Section 6229 Idaho Compiled Statutes.

Now, therefore, It is mutually agreed by and between the parties hereto as follows, to-wit:

The said Western Hospital Association, party of the first part, agrees to provide to each and every person employed by the party of the second part in the occupations and locations above mentioned, who shall elect to receive the benefits of this agreement and shall contribute to the Association hereunder, all necessary and reasonable medical, surgical and hospital attendance, medicines, nursing, crutches and apparatus, by its Surgeons and in the above mentioned hospitals:

1. For sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication).

2. For injuries received arising out of and in the course of employment, and

3. For other injuries received during the employment of such person by the party of the second part, save and except injuries caused by an employee's wilful intent to injure himself or to injure another, or due to intoxication, or to personal difficulties or to unlawful acts done or attempted.

Such medical and surgical care shall be held to include such reasonable care by the Associations' surgeons as may be required imme-

calendar month, and the sum of 50¢ from the earnings of such employee who is so employed *3* days or less in any calendar month.'

"In lieu of this provision the Board prefers and will approve contracts that contain the following provision:

" 'Will deduct, withhold and collect from the earnings of each and every of its employees who shall elect to receive the benefits of this agreement and medical, surgical and hospital attention provided for and who is employed in any of the occupations and territories hereinbefore mentioned, the sum of $1 per calendar month or any fraction of a month, ten (10) days or over; for a fraction of a month less than ten (10) days such deduction shall be ten cents for

diately after the development of a sickness or after an injury and continuously for a reasonable time thereafter, and such hospital attendance and nursing shall be held to include hospital care and nursing in the above hospitals only for such conditions and for such length of time as may be reasonably necessary for the proper treatment of the conditions presented, but not to include hospital care for conditions existing before the employee became a contributor hereunder, nor room and board for minor, ambulatory or convalescent conditions while treatment in hospital is not required; and the care of contagious diseases shall be held to include reasonable medical services in accommodations furnished by the patient or his employer, or when necessary in the isolation Annexes where operated by the Association in connection with its Hospitals, but nothing herein shall be held to require the Association to provide artificial limbs or other prosthetic appliances or the services of a Dentist or any service or care for pregnancy or its complications or for cases of insanity or incurable conditions. The refusal of an employee to consult with the Association's Surgeon or to comply with his instructions as to treatment or his employment of treatment or care not authorized by the Association shall be considered as a waiver of his rights to and shall disqualify him for further benefits for that condition or its complications.

The said party of the first part also agrees that such services, attendance and treatments so to be rendered as aforesaid by said party of the first part to such employees of the party of the second part as shall elect to receive the same, shall at all times be under the supervision of the Industrial Accident Board of the State of Idaho, provided for in said 'Workmen's Compensation Act,' and said

each day that the employee has been employed in the service of the party of the second part in any of its occupations and territories,' etc.

"If you will insert that provision in the proposed hospital contract, the Board will be glad to approve your contract."

If the contract were approved by the Board, the employer would be allowed a credit of twenty-five per cent on the regular premium charged under, and by reason of the Idaho State Insurance Fund Manual of Rules, Classifications and Premium Rates, effective January 1, 1930, Rule IV, Hospital Contracts:

party of the first part further agrees that it will from time to time, in manner and form as said Industrial Accident Board may require, make to said Board reports of such services, attendances and treatments, and of its receipts and disbursements on account of such services so to be rendered.

The said party of the second part, in consideration of the agreements herein contained, to be kept and performed by the party of the first part, agrees that it will deduct, withhold and collect the sum of One Dollar ($1.00) per calendar month from the wages or earnings of each and every one of its employees who shall have elected to receive the benefits of this agreement and medical, surgical and hospital attention herein provided for and who is employed in any of the occupations and territories hereinbefore mentioned for a period of more than three (3) days in any calendar month, and the sum of Fifty Cents (50¢) from the earnings of each of such employees who is so employed three (3) days or less in any calendar month, and that it will promptly, on each monthly pay day of said party of the second part, account for and pay over to said party of the first part the total amount so collected, and so due to said party of the first part, and fifty per cent (50%) thereof additional on its own account, and such payments so to be made as aforesaid to said party of the first part shall be accepted by said party of the first part as full compensation for said services herein provided to be rendered to such employees of the said party of the second part who shall elect to receive the same; provided, however, that if an employee on entering the service of the party of the second part presents a receipt properly executed by his former employer on blank furnished by the party of the first part, showing that he has contributed to the Western Hospital Association, the party of the first part, the full sum of One Dollar ($1.00) for that calendar month under the terms of a similar contract, he should not be required to

"Hospital contracts shall be approved by the Industrial Accident Board of the State of Idaho prior to any reduction in basic premium rates on account thereof.

"1. A reduction of twenty-five per cent (25%) of the basic premium rate shall be allowed in all cases where no separate rate is quoted for use in connection with risks carrying hospital contracts."

make further contributions for that calendar month, but if he has contributed less than One Dollar ($1.00) in that month or has been contributing to some other Hospital Service, then deductions shall be made for that calendar month as from any other new employee beginning with the date of employment.

The said party of the second part agrees that the employees of subcontractors and stationmen shall be covered by this contract unless covered by a similar contract with this Association and that it will transport disabled employees to the Association's nearest hospital and will care for or dispose of all persons not entitled to care by the Association hereunder, and will permit a representative of the Association, if it should so desire, to audit its pay rolls and accounts with reference to this contract at such times as may be mutually convenient.

This contract and agreement shall take effect as of July 1, 1931, and may be terminated on the first of any month by either party hereto giving the other party written notice, at least sixty (60) days before the date of the desired termination of this contract; provided, however, that the termination of this contract and agreement shall not relieve the party of the first part of its duty to provide reasonable medical, surgical and hospital attendance for such employees of the party of the second part for sickness contracted during such employment and for injuries received arising out of and in the course of such employment, prior to the termination of this contract, as herein provided. This contract shall remain in full force and effect until so terminated.

In Witness Whereof, the parties hereto have signed and executed this agreement in triplicate, the day and year herein first above written.

GOLDENDALE MINING COMPANY.
By G. A. JAEROUX, Pres.
WESTERN HOSPITAL ASSOCIATION,
By A. I. BOUFFLER,
Pres.

The present writ of mandate was sued out by plaintiffs to compel the Industrial Accident Board to approve the hospital contract between the two plaintiffs, thus giving the employer the advantage of the rule of the State Insurance Fund above quoted, on the theory that C. S., sec. 6230,[2] gave the board jurisdiction over the contract only, as to services to be rendered to employees thereunder, and to limit rates to $1 per month except in certain circumstances mentioned in said section.

Defendants contend that C. S., secs. 6222 and 6273, give the board authority to pass upon all phases of the contract; hence, to approve or disapprove it.

The nib of the controversy is as to the payment of the hospital fee, thus stated by plaintiffs:

"Under the contract . . . . the employer collects from the employee, who makes the waiver, 50¢ from the workman's

---

[2] "Nothing in this chapter shall be construed as preventing employers and workmen from waiving the provisions of section 6229 and entering into mutual contracts or agreements providing for hospital benefits and accommodations to be furnished to the employee.

Such hospital contracts or agreements must provide for medical, hospital and surgical attendance for such employee for sickness contracted during the employment (except venereal diseases and sickness as a result of intoxication), as well as for injuries received arising out of and in the course of the employment.

No assessment of employee for such hospital contracts or benefits shall exceed $1 per month for each employee, except in cases where it shall appear to the satisfaction of the board, after a hearing had for that purpose, that the actual cost of such service exceeds the said sum of $1 per month, and any such finding of the board may be modified at any time when justified by a change of conditions, or otherwise, either upon the board's own motion or the application of any party in interest.

No profit, directly or indirectly, shall be made by any employer as a result of such hospital contract or assessment. It is the purpose and intent of this chapter to provide that each and every hospital maintained wholly or in part by payments from workmen which furnishes treatment and services to employees for sickness and injury, as provided in this chapter, shall be under the supervision of the board as to services and treatment rendered such employees, and shall, from time to time make reports of such services, attendances, treatments, receipts and disbursements as the board may require."

wages for the first 3 days of the employment, and if he works more than 3 days, he retains the further sum of 50¢, making a total of $1.00 per calendar month for hospital service, and, in addition to this, the employer pays the Association one half the sum that the employee pays. The Board now proposes that this method of payment shall be so changed that the employer shall· collect 10¢ per day from each employee for the first 10 days of his service each calendar month, instead of collecting it within the first 4 days as provided for in the existing contracts.''

Plaintiffs also urge many practical reasons why the Board's requirement would be detrimental to the employer and the hospital contractor. If, however, the Board has no jurisdic- · tion, these considerations are immaterial; if, on the other hand, the Board does have jurisdiction, they are matters for the Board to consider in exercising its discretion, and the question here must be determined on what authority the statutes give the Board; not whether the Board has unwisely exercised that discretion, for no complaint is herein made that the Board has abused its discretion, but that it possesses no right to exercise any discretion, except as specifically set forth in C. S., sec. 6230.

C. S., sec. 6222,[3] does not cover C. S., sec. 6230, because it applies only to systems of compensation or benefits ''in lieu of the compensation provided by this chapter.''

The state board contends that services under a hospital contract are a part of, and included within, compensation.

---

[3] ''With the approval of the (industrial accident) board, an employer who is subject to the provisions of this chapter may enter into an agreement with his employees to provide a system of compensation or benefits in lieu of the compensation provided by this chapter, subject, however, to the following restrictions:

1. The benefits to injured employees shall be at least equivalent to those herein provided.

2. If contributions are required from employees the additional benefits shall be commensurate with such contributions.

3. If acceptance of such substitute system is made a condition of employment, equitable provision shall be made for the withdrawal of employees from it and the distribution of its assets. An employer

It is doubtful if this contention is sound in view of the sections particularly pertaining thereto, but conceding it is, the hospital contracts contemplated by C. S., sec. 6230, and the one under consideration in particular, are not ''in lieu of the compensation provided'' in the chapter on workmen's compensation, but are within the chapter. What regulatory and supervisory powers the Board are given over such extra-statutory systems of compensation by C. S., sec. 6222, we need not, therefore, herein determine.

C. S., sec. 6273,[4] is the only section of the act providing for an appeal from any decision of the Board. An appeal was entertained in *Johnson v. A. C. White Lumber Co.,* 37 Ida. 617, 217 Pac. 979, from a decision of the Board concerning C. S., sec. 6229, and though it is not indicated in the decision that any question thereto was raised, in effect, C. S., sec. 6273, was thereby considered applicable to decisions of the Board on matters other than awards for compensation mentioned in the part of the act designated ''Procedure Before The Board.'' (C. S., secs. 6261–6275.)

If C. S., sec. 6273, applies to C. S., sec. 6229, as to appeals, it applies likewise to C. S., sec. 6230. If it applies to C. S., sec. 6230, as to appeals, why do not all of its provisions apply to C. S., sec. 6230?

C. S., sec. 6273, is entirely inclusive, and says:

''All questions arising under this chapter, if not settled by agreement of the parties interested therein, with the

who is authorized to substitute a plan under the provisions of this section shall give his employees notice thereof in the form prescribed by the board and a statement of the plan approved shall be filed with the board. Copies of settlements made under the provisions of this section shall be filed with the board.''

4''All questions arising under this chapter, if not settled by agreement of the parties interested therein, with the approval of the board, shall, except as otherwise herein provided, be determined by the board. The decisions of the board shall be enforceable by the district court under the provisions of section 6271. There shall be a right of appeal from decisions of the board to the district court as provided in section 6270, but in no case shall such an appeal, either under this section or under section 6270, operate as a supersedeas or stay unless the board shall so order.''

approval of the board, shall, except as otherwise herein provided, be determined by the board.''

The question involved here is one ''arising under this chapter,'' and not outside; hence, though settled by agreement of the parties, *vide* the contract, and no employee complains herein, since not approved by the board, it must be determined and approved, or as hereafter shown, rejected by the board. Being a question under the chapter, it falls within the contemplation of C. S., sec. 6273.

''Approve'' is defined as follows: ''to commend; be satisfied with.'' (Bouvier's Law Dictionary, 3d Rev. 223.) ''To confirm, ratify, sanction, or consent to some act or thing done by another.'' (1 Words & Phrases, 3d ser., 545, citing *Board of Education of City of Hutchinson v. Reno Community High School,* 124 Kan. 175, 257 Pac. 957, 959.) ''To sanction officially; to ratify; to confirm.'' (Words & Phrases, 2d ser., 260, citing *Long v. Needham,* 37 Mont. 408, 96 Pac. 731, 733.) ''To pronounce good; think or judge well of; admit the propriety or excellence of; be pleased with; commend; and as used in Pol. Code, § 17, providing that all contracts made by the state furnishing board must be 'approved' by the Governor or State Treasurer, means more than merely ministerial approval. They must exercise judicial discretion.'' (1 Words & Phrases, 475, citing *State v. Smith,* 23 Mont. 44, 57 Pac. 449.) ''To regard or comment upon as worthy of acceptance, commendation or favorable attention; form or express a favorable judgment concerning; treat, receive or present with favor.'' (Funk & Wagnalls New Standard Dictionary.)

''Determine'' is defined: ''To reach a definite purpose concerning; form the intention of doing or not doing; resolve; decide.'' (Funk & Wagnalls New Standard Dictionary.) ''To fix or settle definitely; make specific or certain; to decide the state or character of; to fix the form or character of; to shape; to prescribe imperatively; to regulate; to settle; to decide.'' (3 Words & Phrases, 2038, citing *People v. Ham,* 32 Misc. Rep. 517, 66 N. Y. Supp. 264, 266.)

From the definitions, it is apparent the Board is given jurisdiction by C. S., sec. 6273, to pass upon these contracts, not only as to the fee not exceeding $1 per month, and the services to be rendered, but also the feature involved herein.

The argument that C. S., sec. 6273, applies only to "agreements" is answered by the fact that the collectively and wholly inclusive term "all questions" is used in C. S., sec. 6273, and that the legislature did not intend C. S., sec. 6273, to be restricted to or by C. S., sec. 6262, since hospital contracts are nominated "agreements" in C. S., sec. 6230, and again so recognized in C. S., sec. 6230A, 1921 Sess. Laws, 476.

Having jurisdiction to approve or determine, the Board may reject. (*Key v. Board of Education of Granville County,* 170 N. C. 123, 86 S. E. 1002; *Fuller .v. Board of University and School Lands,* 21 N. D. 212, 129 N. W. 1029; *Melton v. Cherokee Oil & Gas Co.,* 67 Okl. 247, 170 Pac. 691; *Coker v. Watson,* 132 Okl. 199, 252 Pac. 829, 833.)

The Board did not exceed its jurisdiction, and the writ is therefore quashed. Costs to defendants.

Lee, C. J., and Budge, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.